IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

ANGELA RAE WHITE                                                                    PLAINTIFF

VS.                                      CASE NO. 3:16CV00261 PSH

NANCY A. BERRYHILL, Acting Commissioner,
    Social Security Administration                                                  DEFENDANT

ORDER

Plaintiff Angela Rae White ("White"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny her claim for Disability Insurance benefits (DIB), contends the Administrative Law Judge ("ALJ") erred in finding that although she could not perform her past relevant work, she could perform other work in the economy. Specifically, White contends the ALJ's determination of her residual functional capacity ("RFC") is erroneous because the ALJ impermissibly drew his own inferences from the medical evidence and because he erroneously discredited her testimony. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on August 12, 2015. (Tr. 37-65). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from September 12, 2013, the date of alleged onset, through October 14, 2015, when the ALJ ruled against White.

*The Administrative Hearing:*

White, who was 43 years old at the time of the administrative hearing, earned a licensed practical nurse's degree in 1994 and obtained a cosmetology license in 2004. She testified that she lives with her husband and five year old daughter. White stated she drives without limitations and was working part-time as a hair stylist at the time of the hearing. She described her work as four days a week, beginning at ten a.m. or later and ending before 4 p.m., totaling less than 20 hours. Further, she stated she took extended rest periods during the work day to deal with recurring migraine headaches. According to White, the migraines "control my life," and necessitate the rescheduling of appointments "at least every week." (Tr. 47-48). She testified that the headaches, which are accompanied by neck pain, can last from three hours to ten days. White also described leg and arm pain unrelated to the migraines, and fatigue and weakness related to the migraines and recovery from them. She estimated she experienced more than fifteen migraine headaches a month. As a result, she testified that her daily activities were limited, and that her parents often helped with caring for her five year old daughter. White stated she took Axert for migraines, Phenergan for nausea, Lisinopril for high blood pressure, Seroquel for sleep issues, Buspar for anxiety, and Prilosec for acid reflux. (Tr. 41-59).

Mack Welch ("Welch"), a vocational expert, stated White's past work as a nurse was skilled work classified as medium exertional employment, and that her work as a cosmetologist was skilled, light work. The ALJ posed a hypothetical question to Welch, asking him to assume a worker of White's age, education, and experience, who could perform light work but avoid working around hazards such as unprotected heights or dangerous machinery. Welch responded that such a worker could perform the job of cosmetologist as well as other jobs, such as waitress, price marker, or ticket

marker. A second hypothetical question was posed, assuming the same parameters as in the first hypothetical but adding the restriction that the worker could perform simple, routine tasks with occasional changes in a routine work setting. Welch testified that such a worker could not perform the jobs of cosmetologist or waitress, but could perform the jobs of price marker and motel maid. A third and final hypothetical question was posed, asking Welch to assume the same parameters as in the earlier questions but add that the worker would be off task or away from the workstation up to 20% of the day and would miss three or more days a month. Welch identified no jobs for the worker described in the ALJ's third hypothetical question. (Tr. 59-64).

*ALJ's Decision:*

In his October 14, 2015, decision, the ALJ determined White had not engaged in substantial gainful activity since the onset date of September 12, 2013. Severe impairments found by the ALJ were multiple sclerosis, bulging disc, cervical-spine, anxiety disorder, and depression. The ALJ discussed White's obesity and hypertension, explicitly finding these impairments were non-severe. The ALJ found White's migraine headaches, which were not mentioned by the ALJ either as severe or non-severe, did not meet a listing. The ALJ determined White had the RFC to perform light work, except she should avoid working around hazards such as unprotected heights or dangerous machinery. The ALJ further found she could perform simple, routine tasks, and could tolerate occasional changes in a routine work setting. The ALJ found White's subjective allegations were "not entirely credible," and cited her "robust" daily activities, her ability to perform part-time work, and relief from migraines via occipital nerve blocks as factors in his credibility conclusion. The ALJ determined White could not perform any of her past relevant work but, relying upon Welch's testimony, she could perform the jobs of price marker and motel maid. Accordingly, the ALJ

3

concluded White was not disabled. (Tr. 12-23).

**Credibility Assessment by the ALJ:**

Berryhill contends the ALJ's credibility finding was supported by substantial evidence, and points to White's daily activities and inconsistencies in the record to support her argument. We find this argument unpersuasive. The ALJ's credibility conclusion is not based upon substantial evidence, and the case must be remanded.

Initially, we observe that while the ALJ found White "not entirely credible" it would be more accurate to state the ALJ found White's allegations regarding her migraine headaches to be almost wholly incredible. The ALJ discounted White's testimony concerning her migraine headaches greatly, as he found her migraine headaches did not amount to a severe impairment nor did they merit any discussion as to why they were considered to be non-severe.

The objective medical evidence reflects White has received medical care for migraines beginning in 2002. During the twenty-five month relevant period for purposes of White's claim, migraines were noted by medical care providers on twenty-four occasions. (Tr. 452-455, 456-458, 469-70, 701-706, 722-727, 729-734, 804-808, 828-829, 834-836, 837-839, 840-842, 844-846, 854-855, 858, 860-862, 865-867, 882-884, 888-895, 918-919, 907-915, 959-963, and 970-975). Included among the entries are references to the frequency and duration of the headaches – e.g., at least 15 a month in September 2013 (Tr. 469-470), 4 day migraine in April 2014 (Tr. 837-839), migraines throughout the month of May 2014 (Tr. 804-808), 3-4 headaches a week, each lasting 3-8 hours in August 2014 (Tr. 844-846), and improvement from more than 15 per month to 6 per month (Tr. 907-915). While the parties quarrel over whether the treatment should be described as conservative or aggressive, it is undisputed that the treatment was *frequent*.

4

The ALJ cites one entry in the medical records, in November 2014, as support for his dramatic discounting of White's allegations regarding her migraines. The entry, from Dr. Yuli Soeter ("Soeter"), reflects that a left occipital nerve block performed in October provided 50% relief, and with a decrease in frequency. (Tr. 858). Soeter, diagnosing chronic migraine headaches, gave White another nerve block in December 2014. (Tr. 854-855). Five days after the December nerve block White was treated for a three day migraine headache with no relief from her medications. (Tr. 865-867). About three months later White was treated for a migraine at the emergency room of Five Rivers Medical Center. (Tr. 888-895). Thus, the nerve block cited by the ALJ yielded temporary relief, at best. When seen at UAMS in April 2015, White was similarly found to have temporary relief with botox injections (improvement from 15-plus headaches per month to 3 per month) but with the number of headaches trending upward (from 3 to 6 per month). (Tr. 907-915). Overall, the medical records reflect consistent treatment before and during the relevant period, with a variety of treatments attempts by numerous providers, with no mention of any exaggeration by White of symptoms. The citation of a single entry showing temporary improvement paints an incomplete and skewed picture of her condition. The ALJ's reliance on the single entry to the exclusion of the remainder of the medical records was erroneous.

In addition, the ALJ's reference to White's "robust" daily activities is at odds with her testimony given at the hearing. (Tr. 19). While she did state she was working part-time, she described the employment as very flexible. White testified that she was able to earn about $11,000.00 in 2013 and about $5,000.00 in 2014, indicating her abilities were "progressively declining." (Tr. 44). A key to her ability to earn, according to White, was her ability to rest for extended periods during her abbreviated work day, her ability to reschedule clients with little notice,

and her ability to miss a day or a portion of a day on a weekly basis. Typically, performing part-time work corresponds with a high level of daily activities. However, White's depiction of her daily activities was atypical, and the ALJ overstated her daily activity level in formulating his credibility determination.

In summary, the ALJ failed to perform an adequate credibility assessment. Since the RFC finding was directly based upon the credibility assessment, it must be reconsidered. We remand for further proceedings consistent with this Order.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is reversed and remanded. This remand is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 28th day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE